[Civ. No. 16371.   First Dist., Div. Two.   Dec. 2, 1955.]

ALCIDE COMASTRI, Respondent, v. STANLEY BURKE, as Special Administrator, etc., Appellant.

Stanley Burke, in pro. per., for Appellant.

Davis & Barber and Robert H. Kroninger for Respondent.

NOURSE, P. J.—Jessie H. Paterson has appealed from an adverse judgment in a quiet title action, instituted by respondent Alcide Comastri, with respect to the proceeds of a home which had stood in the names of Mary D. Comastri, the deceased wife of said Alcide Comastri, and said Alcide Comastri as joint tenants. Mary D. Comastri was the sister of Mrs. Paterson and will hereinafter be called sister Mary. Mrs. Paterson's claim was based on the contention that the home was bought by sister Mary with money taken from a joint account in which Mrs. Paterson had an equal interest, that the withdrawal by sister Mary of much more than half of the funds in said account invaded Mrs. Paterson's interest and that she could follow her joint tenancy interest in the home so bought. Respondent Comastri took the position that the account was not a true joint account but that sister Mary was the true owner with full right of disposition during her lifetime, which position was upheld by the trial court. Pending the appeal Mrs. Paterson died and Stanley Burke, special administrator of her estate, was substituted as appellant.

The following facts are undisputed.

In May, 1934, an account was opened at the San Francisco Bank in form payable to sister Mary, Mrs. Paterson or Agnes G. Nye, or to the survivor of them. Agnes G. Nye was a sister of the other two depositors and will further be called sister Agnes. The initial deposit of more than $12,000 was made from funds of sister Mary. Following the death of sister Agnes, sister Mary in July, 1941, withdrew the increased balance of the account and placed it in the same bank in an account in form payable to sister Mary or Mrs. Paterson or to the survivor of them. In July, 1945, sister Mary married respondent Comastri and in the following August she withdrew the increased balance of the second account and placed it in a third account in the same bank payable in the identical manner as the second one except that sister Mary was now named as Mary B. Comastri. From this account sister Mary withdrew on October 13, 1945, more than $19,000 which she applied to the purchase of the home, the title to which was taken in the names of herself and her husband as joint tenants. She died on January 8, 1947. All withdrawals from the three successive accounts were made by sister Mary only, all deposits in these accounts over and above the transactions already stated were made by her from her own funds, except one deposit of $1,578.22 made by Mrs. Paterson on October 23, 1934. It was, however, found by the court that the funds then deposited were also the property of sister

Mary and this finding, although attacked by appellant, must be sustained as a reasonable inference from the evidence. Sister Mary at all times until one day before her death retained possession of the passbooks of the successive accounts. Mrs. Paterson did not include any part of the interest accrued on said accounts in her income tax returns.

The court found and concluded further in substance that the three accounts were not true joint tenancy accounts; that it was agreed at the opening of the first and second account between the depositors that all moneys then or thereafter deposited in said accounts would remain the sole property of sister Mary and that it was never intended and that Mrs. Paterson never understood that she had any vested interest in any of the three accounts. Respondent Comastri was adjudged entitled to the proceeds of the sale of the house and moreover to interest during the period that he had been out of possession of said proceeds as a result of the unfounded claim of Mrs. Paterson.

Appellant's attack on these findings and conclusions is mainly a proposition of law based on section 15a of the Bank Act (Deering's Gen. Laws, Act 652) which read in part:

"When a deposit shall be made in any bank by any person or persons whether minor or adult in the names of such depositor or depositors and another person or persons, and in form to be paid to any of them or the survivor or survivors of them, such deposit and any additions thereto made by any such persons after the making thereof, shall become the property of such persons as joint tenants, and the deposit together with all dividends or interest thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetime or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be valid and sufficient release and discharge to such bank for all payments made on account of such deposit prior to the receipt by such bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

It was held in *Paterson* v. *Comastri*, 39 Cal.2d 66 [244 P.2d 902] (a suit between the same parties concerning funds withdrawn from three other ostensible joint accounts in the names of sister Mary and Mrs. Paterson), that during the life of the codepositors, the presumption that the money deposited had become the property of the codepositors as joint tenants was rebuttable, and that such applied also to funds withdrawn by one codepositor during the life of the parties, even if one of the depositors had subsequently died. The presumption, conclusive in the absence of fraud or undue influence, that it was the intention to create a true joint tenancy, applied only after death of a codepositor in favor of the survivor to moneys remaining in the account at the time of death. The section was to be deemed a part of each contract creating a joint bank account and to permit parol evidence of the true intention of the parties contrary to the express terms of a written contract. "To hold otherwise 'would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula. . . . It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality.' (Cardozo, Ch. J., in *Moskowitz* v. *Marrow*, 251 N.Y. 380, at p. 397 . . . [167 N.E. 506, 66 A.L.R. 870])'' (p. 73). It was held that there was sufficient evidence to support the trial court's finding that Mary did not intend to create true joint tenancy accounts with Mrs. Paterson but that the funds withdrawn were her own property.

Appellant contends that in the case before us the death of sister Agnes caused the presumption of intention to create a true joint tenancy account to become conclusive and to exclude all reliance on true intention as to the account of which she was a codepositor. It is urged that therefore the funds with which the second account was opened were true joint tenancy funds of Mrs. Paterson and her sister Mary and that the finding that all funds in that account had always been the property of sister Mary alone was unjustified. It is contended that there was no evidence of any agreement changing the true joint tenancy character of the second account and that said character continued into the third account. Respondent's position is that under the rule of the prior Comastri case the true intention as to the character of the third account could be proved by parol evidence and

that there was evidence to prove that independent of the character of the original deposit, it was not the intention and understanding of sister Mary and Mrs. Paterson that the third account should be a true joint account in which Mrs. Paterson had a present equal interest. However, respondent also urges that appellant's application of the rule of the prior Comastri case to the situation of the first account is unsound and that, although that rule prevented persons claiming against the survivors or the bank to rely on a true intention of decedent contrary to survivorship, it did not govern the relation or evidence as between the two survivors themselves.

There is no doubt that the evidence, especially the testimony of Mrs. Paterson herself justified the inference that Mrs. Paterson did not understand that she had a present interest in any of the three accounts, but that she understood that her rights would commence only when she would be the survivor of the three sisters. However, she did not distinguish between the three accounts mentioned. She stressed that all three were joint accounts and she did not testify to any agreement expressly limiting her rights. Hence it seems doubtful whether an inference could reasonably be drawn that she had agreed to give up any present interest which the law might have granted her on the death of sister Agnes. Under these circumstances we prefer to base our decision on the limited character of the conclusive presumption of section 15a of the Bank Act, as to which we have concluded that respondent's position is sound.

■ The previous cases were concerned with two joint depositors only; no case has been cited to or found by us in which the exact point here involved has been decided. However, we understand the principle of the earlier cases, particularly *Paterson* v. *Comastri* and *Moskowitz* v. *Marrow, supra,* to be that between living depositors and as to their relations during their joint lives, their actual intention must govern and may be proved by parol evidence to prevent results not contemplated by the parties, in particular by the one who actually furnished the money for the account. Logically this principle must then also be applied to the relation of two survivors between themselves, especially when one of them furnished all the money in the account. ■ If a depositor has added to his account the names of two relatives for the purpose of making them beneficiaries after his death and agents during his life, it would be a most unreasonable and

frustrating rule which would necessarily terminate the real depositor's free right of disposition on the death of one of the intended agents. Such an undesirable result we should accept only if the words of the statute clearly indicated that it was intended by the Legislature. ■ The words of section 15a, *supra,* do not necessitate said conclusion. They do not expressly provide for the conclusive character of the presumption in actions between surviving depositors. The expression "any action or proceeding to which . . . the surviving depositor or depositors may be a party," can well be construed as limited to a situation in which said "surviving depositor or depositors" is the party of the one side, whereas of the other side there is a party not a living depositor (ordinarily a party deriving his right from a deceased depositor). As this construction leads to a sensible result in line with the prior decisions and is not inconsistent with the language of the statute or with any apparent intention of the Legislature we shall adhere to it. Appellant's main contention is thereby necessarily decided adversely to him.

Two additional grievances are developed by appellant. ■ There is no merit in his contention that the court erred in denying his demand for a jury trial. We held in *Daniels* v. *Baldwin,* 115 Cal.App.2d 487, 489 [252 P.2d 351], in proceedings of a similar character in equity that "the parties are not entitled to a trial by jury as a matter of right." ■ However, we agree with his contention that there is no basis for the recovery of interest by respondent over the period that the proceeds of the sale of the home were held in escrow or in deposit in court pending the litigation of Mrs. Paterson's claim. Appellant does not owe interest on the basis of section 1915 of the Civil Code as compensation "for the use, or forbearance, or detention of money" as none of these three causes is present in this case. Neither can the interest be granted as damages for the wrongful prosecution of the claim of interest in the home as there is no finding or even contention of lack of probable cause and malice, without which the making of an unfounded claim is not tortious.

Insofar as the judgment appealed from grants respondent interest it is reversed with instructions to the trial court to amend the conclusions of law and the judgment in accordance with our holding; in all other respects the judgment is affirmed, each party to bear its own costs.

Dooling, J., and Kaufman, J., concurred.